FIRST NATIONAL BANK OF McKEES-
PORT, National Bank of McKeesport,
Peoples Union Bank, Appellants,

v.

FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION OF HOMESTEAD,
Appellee.

FIRST NATIONAL BANK OF McKEES-
PORT, National Bank of McKeesport,
Peoples Union Bank, Appellants,

v.

HOME LOAN BANK BOARD et al.,
Appellees.

BUTLER SAVINGS AND TRUST COM-
PANY et al., Appellants,

v.

HOME LOAN BANK BOARD et al.,
Appellees.

Nos. 12460, 12491, 12497.

United States Court of Appeals
District of Columbia Circuit.

Argued April 6, 1955.

Decided June 2, 1955.

Mr. W. V. T. Justis, Washington, D. C., with whom Messrs. F. Gloyd Awalt and James P. Murray, Jr., Washington, D. C., were on the brief, for appellants in Nos. 12,460 and 12,491.

Mr. Francis M. Shea, Washington, D. C., with whom Mr. Alfred L. Scanlan, Washington, D. C., was on the brief, for appellants in No. 12,497.

Mr. Donald B. MacGuineas, Atty., Department of Justice, of the bar of the Supreme Court of Illinois, *pro hac vice*, by special leave of Court, with whom Mr. Samuel D. Slade, Atty., Department of Justice, was on the brief, for appellees Home Loan Bank Board and certain members of the Board in Nos. 12,491 and 12,497. Messrs. Oliver Gasch, Principal Asst. U. S. Atty., and Edward H. Hickey, Atty., Department of Justice, also entered appearances for appellees Home Loan Bank Board and certain members of the Board in Nos. 12,491 and 12,497.

Mr. E. W. Mollohan, Jr., Washington, D. C., with whom Messrs. Charles M. Irelan and George Johannes, Washington, D. C., were on the brief, for appellee in No. 12,460. Mr. George Johannes, Washington, D. C., entered an appearance for appellee First Federal Savings & Loan Ass'n in No. 12,491.

Before EDGERTON, DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

The above three cases were consolidated for hearing. The facts and general principles of law involved in cases No. 12,491 and No. 12,497 are essentially the same.

In No. 12,491, the First National Bank of McKeesport, National Bank of Mc-Keesport and Peoples Union Bank, all of McKeesport, Pennsylvania, filed a complaint against the Federal Home Loan Bank Board, its individual members, and the First Federal Savings and Loan Association of Homestead, Pennsylvania, asking that the action of the Federal Home Loan Bank Board in allowing the First Federal Savings and Loan Association of Homestead to establish a branch office be declared illegal and enjoined. Upon the filing of a motion for summary judgment by the Board and its members, the court on November 9, 1954, entered its order dismissing the complaint.

In No. 12,497, the Butler Savings and Trust Company, and the Workingmen's Building and Loan Association, of Butler, Pennsylvania, filed a similar suit against the Federal Home Loan Bank Board and its individual members, asking that the court declare illegal and enjoin the action of the Federal Home Loan Bank Board in authorizing the Friendship Federal Savings and Loan Association of Pittsburgh, Pennsylvania, to establish a branch office in Butler, Pennsylvania, and asking the court to declare that the Federal Home Loan Bank Board must rehear and determine the case in accordance with the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. Upon the filing of cross motions for summary judgment, the court on October 15, 1954, denied plaintiff's motion for summary judgment, granted defendant's motion, and dismissed the amended complaint (reconsideration denied November 1, 1954).

In both cases the Federal Home Loan Bank Board and its individual members were personally served, but the First Federal Savings and Loan Association of Homestead (a codefendant in No. 12,491) was served out of the District of Columbia, being served in Homestead, Pennsylvania, its home office. A motion to quash the substituted service on the First Federal of Homestead was granted

by the District Court and forms the basis of the appeal in No. 12,460.

### Appeals No. 12,491 and No. 12,497

■ In the cases of North Arlington Nat. Bank v. Kearny Fed. Sav. & L. Ass'n, 3 Cir., 1951, 187 F.2d 564, certiorari denied, 1951, 342 U.S. 816, 72 S. Ct. 30, 96 L.Ed. 617, and Springfield Institution for Savings v. Worcester Fed. Sav. & L. Ass'n, 329 Mass. 184, 107 N.E. 2d 315, certiorari denied, 1952, 344 U.S. 884, 73 S.Ct. 184, 97 L.Ed. 684, it was held that the Home Owners' Loan Act of 1933, as amended,[1] authorizes the Federal Home Loan Bank Board to permit federal associations, regularly organized, to establish branch offices. These cases make it clear that such authority does exist, and we follow the reasoning and conclusions of these cases on this point.

We then reach the question as to whether the Administrative Procedure Act applies to proceedings directed to the approval of the establishment of such branches. Serious doubt arises as to whether any of the plaintiffs in the instant cases (other than the Workingmen's Building and Loan Association, one of the plaintiffs in No. 12,497) is covered within the definition of properly conducted existing "local thrift and home-financing institutions" (see Sec. 5(e) of the Home Owners' Loan Act of 1933, as amended, *infra*), as such institutions are usually mutual savings banks and building and loan associations rather than national banks and trust companies. However, we will assume that plaintiffs may be considered "local thrift and home-financing institutions", as we consider the point raised now for the first time in connection with branch offices.

■ Regulations adopted by the Board provide for the establishment of branch offices. Over two hundred branches had been authorized at the time of the disposition of these cases in the District Court. It will be noted from the controlling regulation[2] that the applicant for a branch office must state the need for the branch, the functions to be performed, the personnel and office facilities to be provided, and the estimated annual volume of business, income and expenses of such branch office. There is also a requirement that the application be accompanied by a proposed annual budget of such association. Nothing is said about protection from "undue injury to * * * local thrift and home-financing institutions", as is the case in an original grant. It seems reasonable, once a federal association is established under the grant of an original charter and able to make loans within a fifty-mile radius of the home office, that the question of the establishment of branches should be committed to agency discretion. Section 5(e) of the Home Owners' Loan Act of 1933, as amended, provides:

> "*No charter* shall be granted except to persons of good character and responsibility, nor unless in the judgment of the Board a necessity exists for such an institution in the community to be served, nor unless there is a reasonable probability of its usefulness and success, nor unless the same can be established without undue injury to properly conducted existing local thrift and

---

1. 12 U.S.C.A. §§ 1461–1468.

2. "*Branch office.* No Federal association may establish or maintain a branch office without the prior written approval of the Board. Each application by a Federal association for permission to establish or maintain a branch office shall state the need for such branch office; the functions to be performed; the personnel and office facilities to be provided; the estimated annual volume of business, income, and expenses of such branch office; and shall be accompanied by a proposed annual budget of such association. Any business of a Federal association, except the approval of loans, may be transacted at a branch office, as authorized by its board of directors. A detailed record of all transactions of any branch office of a Federal association shall be maintained at such office and such control records as may be necessary for the proper conduct of such association's business shall be furnished by such branch office to its home office." 24 C.F.R., Sec. 145.14.

home-financing institutions.". (Italics supplied.)·

■ While neither Section 5(e) nor any other section of the act specifically requires an agency hearing in granting an original charter, we may assume for the purposes of these cases that such a hearing is required in that instance. Even so, the same formalities are not required in the consideration of an application for a branch. Section 5(e) quoted above refers simply to "charters," and governs the Board's consideration of an application for the grant of a charter to establish an "institution." A branch, however, is not an "institution" and does not require a charter, its establishment being of an entirely different character.

■ Section 5 of the Administrative Procedure Act, 5 U.S.C.A. § 1004, requires that "(i)n every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing" (except in six listed circumstances not here applicable), an agency shall observe certain procedures specified in subsequent sections of that act. Neither the Home Owners' Loan Act of 1933, as amended, nor the regulations thereunder, contains any provision that an application for a branch must be "determined on the record after opportunity for an agency hearing."

Appellants urge that Section 5(e) of the Home Owners' Loan Act gives them protection from "undue injury" in the establishment of a branch, and contend that, even though that act does not specifically provide for a determination on the record, they are entitled, as a matter of constitutional due process, to the adjudication and procedural provisions of the Administrative Procedure Act, citing in support Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; Riss & Co. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345; Cates v.

Haderlein, 342 U.S. 804, 72 S.Ct. 47, 96 L.Ed. 609; United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54. None of these cases has application here. We think it clear that, even if it be assumed that Section 5(e) requires an agency hearing on the original grant, there is no such requirement on an application for the establishment of a branch.

■ What we have said disposes of these cases and we, therefore, are not bound to consider the question of appellants' standing. We merely call attention to the fact that, since authority to permit establishment of a branch is clearly committed to agency discretion, the matter is disposed of automatically by Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009.[3] As we said in Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. ——, 225 F.2d 924:

"While in the light of the decisions of the Supreme Court we would certainly be prepared to hold in an appropriate case that one who complains of administrative action may find a remedy under the Act beyond the strict scope of judicial review recognized prior to its adoption, no judicially enforceable right of plaintiffs has been disregarded by the administrative action brought before us for review."

### Appeal in No. 12,460

■ This is an appeal from the action of the District Court in quashing the substituted service on the First Federal Savings and Loan Association of Homestead.

The disposition made of Appeals No. 12,491 and No. 12,497, affirming the orders dismissing these complaints, makes the determination of the appeal in No. 12,460 moot and that appeal will be dismissed.

3. "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion
"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof." (Emphasis supplied.)

Conclusion

The judgments of the District Court in No. 12,491 and No. 12,497 are affirmed; the appeal in No. 12,460 is dismissed.

Nos. 12,491 and 12,497 are affirmed. No. 12,460 is dismissed.

EDGERTON, Circuit Judge (dissenting).

In my opinion the Administrative Procedure Act requires a hearing and authorizes review.