SALEM HOSPITAL *vs.* RATE SETTING COMMISSION & another.[1]

No. 87-928.

Suffolk.  May 10, 1988. — August 22, 1988.

Present: GRANT, CUTTER, & KASS, JJ.

*Hospital,* Medicaid reimbursement. *Medicaid. Rate Setting Commission. Division of Administrative Law Appeals. Administrative Law,* Regulations, Rate setting, Agency, Judicial review. *Practice, Civil,* Review of administrative action. *Statute,* Construction. *Words,* "May," "Shall."

A hospital that challenged the correctness of the Rate Setting Commission's application of economic data in setting future final Medicaid reimbursement rates was not required first to apply to the commission, pursuant to 114.1 Code Mass. Regs. § 3.14(1) (1978), for discretionary administrative adjustments before filing an appeal under G. L. c. 6A, § 36, with the Division of Administrative Law Appeals. [325-328]

CIVIL ACTION commenced in the Superior Court Department on September 17, 1984.

The case was heard by *Thomas R. Morse, Jr.,* J.

*Suzanne E. Durrell,* Assistant Attorney General, for the Rate Setting Commission & another.

*Edward H. Seksay* for the plaintiff.

KASS, J. Aggrieved by the final Medicaid[2] reimbursement rates set for it by the Rate Setting Commission,[3] Salem Hospital appealed[4] under G. L. c. 6A, § 36, to the Division of Adminis-

---

[1] Division of Administrative Law Appeals.

[2] See 42 U.S.C. §§ 1396 et seq. (1982); G. L. c. 118E.

[3] Established under G. L. c. 6A, § 32.

[4] The hospital filed three appeals with the Division of Administrative Law Appeals (DALA): one involving the period from October 1, 1977, through December 31, 1977; a second involving the period from January 1, 1978, through September 30, 1978; and a third for the period from October 1, 1978, through September 30, 1979. The appeals were consolidated before DALA for purposes of hearing, briefing, and argument.

trative Law Appeals (DALA). An administrative magistrate, after hearing, concluded that the appeal to DALA did not lie because the hospital had failed first to ask the commission for administrative adjustments. In so deciding, the magistrate relied heavily upon *Woodland Estates, Inc.* v. *Rate .Setting Commn.*, 15 Mass. App. Ct. 297 (1983), and this appeal requires us to explore the boundaries of that opinion. More particularly, we must consider whether, under the regulatory scheme applicable in this case, the hospital had a right under G. L. c. 6A, § 36, to appeal directly to DALA without a further round before the commission.

Having decided that the points being pressed in the hospital's appeals were not properly before her, the administrative magistrate ordered that the rates established by the commission be affirmed. Thereupon the hospital took the next step of lodging an appeal in the Superior Court under the State Administrative Procedure Act (G. L. c. 30A, § 14A). A judge of the Superior Court, assisted by a recommendation from a special master,[5] concluded that further recourse to the commission was not a prerequisite to the hospital's appealing to DALA under § 36. Accordingly, the judge set the DALA decision aside and remanded the case to DALA for further consideration as to the adequacy, fairness, and reasonableness of the rates set by the Rate Setting Commission. The government has appealed from that judgment.[6]

Any party aggrieved by an interim or final rate established by the commission "*shall*, within thirty days after said rate is filed with the state secretary . . . file an appeal with [DALA] . . . ." G. L. c. 6A, § 36, as inserted by St. 1973, c. 1229, § 2 (emphasis supplied). To the extent that the first step in understanding a statute is to read its plain words (*Blue Cross*

---

[5] The special master's recommendations are not in the joint appendix furnished by the parties.

[6] Although an appeal does not ordinarily lie from an order remanding a case to an administrative agency, see *Metropolitian Dist. Commn.* v. *Department of Pub. Utils.*, 352 Mass. 18, 30 (1967), DALA is a party to the appeal and could not very well appeal from its own order. In such circumstances the appeal is properly here. *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.*, 378 Mass. 189, 191 (1979).

*of Mass., Inc.* v. *Commissioner of Ins.*, 397 Mass. 674, 678 [1986]), it is at least significant that § 36 speaks in mandatory terms and does not qualify with alternatives or conditions the obligation of the aggrieved person to record dissatisfaction by means of an appeal. Within the third and fourth paragraphs of § 36 the word "may" is used in connection with review of other aspects of the rate setting process. The distinction in statutes between "shall," a word of command, and "may," a word of permission, is not one which courts pass over lightly unless context or other provisions require it. *City Bank & Trust Co.* v. *Board of Bank Incorporation*, 346 Mass. 29, 31 (1963). All but the most intrepid health care provider, confronted with the text of § 36, would conclude that the filing of an appeal to DALA within thirty days was an essential step in preserving the right to contest a rate established by the commission.

At this juncture it is appropriate to analyze the nature of Salem Hospital's grievance with the rates established for it. In general terms it is, as § 36 requires, that the rates were not "adequate, fair and reasonable." A persistent complaint was that the commission erred in analyzing per bed costs on the basis of the hospital's capacity, rather than the actual or budgeted volume of patient days. Administratively necessary days were said to be miscalculated. In projecting future costs, the hospital contends, the commission had failed to adjust for abnormalities in base years. The commission, so it was alleged, had also neglected to factor in costs attendant on new capital equipment and services for which the hospital had received a determination of need. The allowed outpatient rate did not take into account costs and charges for outpatient services which the commission had reviewed and allowed. What these grievances have in common is that they assert that the commission misapprehended or misapplied economic data which the hospital had furnished.

By contrast, in *Woodland Estates, Inc.* v. *Rate Setting Commn.*, 15 Mass. App. Ct. at 298, the health care provider (a nursing home) sought to introduce into the rate base the cost of additional nursing coverage for which the provider was obliged to obtain prior approval under then applicable regula-

tions. Without prior approval, the provider could not claim the excess cost from the Rate Setting Commission and could not, by appeal, charge the commission with failing to take that excess cost into account in establishing a rate for the provider. *Id.* at 298-301. This was not a matter of barren insistence on procedural regularity. There is a practical difference between asking for allowance of an excess cost in advance, when there may be a wide range of options, policies and compromises available, and justifying it after the fact, when the choices are to approve or disapprove. Cf. *Stadium Manor, Inc.* v. *Division of Admn. Law Appeals,* 23 Mass. App. Ct. 958, 960-961 (1987).

As for the items here in controversy, some, under the then applicable regulations[7] could, indeed, have been the subject of an application for administrative adjustment, e.g., errors in calculation, inability to use a significant portion of licensed beds, and a substantial new program. The regulatory text provided that "[a] hospital *may* make application for discretionary administrative adjustment . . ." (emphasis supplied). 114.1 Code Mass. Regs. § 3.14(1) (1978) and see n.7 of this opinion. The operative word — may — is a word of permission, not command. In that respect the governing regulation here is unlike that which pertained in *Woodland,* which provided, "Application for recognition of the cost for such required additional nursing care coverage *shall* be made in accordance with paragraph 8 of these regulations" (emphasis supplied). Regulation no. 72-1(5)(c) (1972). The signal difference between the *Woodland* case and this case is that here the raw material for

---

[7] During the fiscal periods involved in the appeal, the regulations governing administrative adjustments were amended five times. None of these amendments worked changes material to consideration of this case. For a representative text of the regulation as it bears on this case, see 114.1 Code Mass. Regs. § 3.14, as effective January 1, 1978. The regulation currently applicable to administrative adjustments appears in 114.1 Code Mass. Regs. § 28.13 (1988) and sharply limits the occasion for applying for an administrative adjustment to claims of arithmetic error. Application for an administrative adjustment is *proscribed* by § 28.13 "if the applicant hospital is seeking to reverse a substantive determination pursuant to 114.1 CMR § 28.00."

future (as opposed to retrospective) rate determination had already been run by the commission in the proper time sequence.

Nothing in our reading of the applicable regulatory scheme requires that a hospital which, as here, is making a multifaceted attack on rates set by the commission must march up the hill again to the very commission before whom it has appeared and from whose determination it is appealing. The circularity and wastefulness of such a procedure appears to have been recognized by the bureau of hospitals and clinics in the more current regulatory scheme adverted to in note 7. Certainly, such a procedure does not encourage "speedy and fair disposition of all appeals," which is the mission of DALA as set forth in G. L. c. 7, § 4H, as appearing in St. 1983, c. 683. Salem does not challenge the principles of any rules or methodology of the commission; it challenges the correctness of their application. See *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.*, 16 Mass. App. Ct. 300, 306-307 (1983); *Little People's Sch., Inc.* v. *Rate Setting Commn.*, 403 Mass. 16, 19 (1988). The role of the commission as ground level rate setter is not usurped. Compare *Woodland Estates, Inc.* v. *Rate Setting Commn.*, 15 Mass. App. Ct. at 301; *Beth Israel Hosp Assn.* v. *Rate Setting Commn.*, 24 Mass. App. Ct. 495, 505 (1987).

Under 114.1 Code Mass. Regs. § 3.14 (1978) and its progeny, administrative adjustment was an option for the hospital and the commission. It appears from the combined statutory and regulatory scheme that the adjustment procedure was designed for readily identifiable and particularized anomalies in an established rate; the appeal authorized in G. L. c. 6A, § 36, enables a provider to make a plenary attack on a set of rates. As matters developed during the course of Salem Hospital's appeal before DALA, a substantial number of disputed issues were adjusted and memorialized in a stipulation filed with the administrative magistrate. No partial adjustment of the rates in issue was, however, ordered on the basis of that stipulation.[8]

---

[8] Before the administrative magistrate and the special master there was discussion of administrative adjustment of residual issues. The commission's

The Superior Court judge correctly determined that a request for administrative adjustment was not a prerequisite for an appeal under G. L. c. 6A, § 36, to DALA, and the order of remand is affirmed.

*So ordered.*

response ranged from evasive to Delphic. So far as procedure was concerned, one senses the flavor of a "heads I win, tails you lose" posture on the part of the government.