RETIREMENT BOARD OF SOMERVILLE *vs.* CONTRIBUTORY
RETIREMENT APPEAL BOARD & another.[1]

No. 94-P-550.

Suffolk. March 22, 1995. - June 28, 1995.

Present: KASS, JACOBS, & IRELAND, JJ.

*Administrative Law*, Substantial evidence, Judicial review, Adjudicatory
proceeding. *Contributory Retirement Appeal Board. Public Employ-
ment*, Accidental death benefits.

A 1992 decision of the Contributory Retirement Appeal Board granting
accidental death benefits pursuant to G. L. c. 32, § 9, was arbitrary and
capricious even though supported by substantial evidence in the admin-
istrative record, where on essentially the same record the board in 1987
had declined to make a determination and where there was no reason
cited by the board explaining or supporting the change in result. [676-
679]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 12, 1992.

The case was heard by *E. Susan Garsh*, J., on motions for
summary judgment.

*Steven P. Perlmutter* (*Michael D. Lurie* with him) for the
plaintiff.

*John B. Manning* (*Leonard F. Zandrow* with him) for
Mary Grant.

*Rosemary S. Gale*, Assistant Attorney General, for Con-
tributory Retirement Appeal Board, was present but did not
argue.

IRELAND, J. The Somerville retirement board (SRB) ap-
peals from a judgment of the Superior Court affirming the
decision of the defendant Contributory Retirement Appeal

---

[1] Mary Grant.

Board (CRAB) to grant accidental death benefits pursuant to G. L. c. 32, § 9, to the defendant, Mary Grant.

In a memorandum and decision allowing Grant's motion for summary judgment, a Superior Court judge upheld CRAB's decision, finding the decision was supported by substantial evidence within the administrative record. We reverse the ensuing judgment and order the matter remanded to CRAB for further action consistent with this opinion.

Except where otherwise noted, the facts are not in dispute. In 1976, Grant's late husband, Richard Grant, was injured when he fell off a truck in the course of his employment as a heavy equipment operator with the Somerville housing authority. He suffered a compound fracture and dislocation of the elbow and multiple fractures of the pelvis. In 1978, Richard Grant underwent a total hip replacement due to traumatic arthritis of the hip. As a result, he was found eligible by SRB to receive accidental disability retirement benefits under G. L. c. 32, § 7. Seven years later, in December, 1985, he developed a serious bacterial blood infection within the hip and hip prosthesis. The condition failed to respond to intravenous antibiotic treatment and, in April, 1986, the hip prosthesis was surgically removed. Richard Grant died on May 24, 1986. The death certificate lists as the immediate cause of death "aspiration" due to "gastrointestinal bleeding" caused by "hepatic cirrhosis." "Other significant conditions" listed on the death certificate form were "Septic hip, encephalopathy." In a letter to Grant's attorney dated June 16, 1986, Dr. Beatrice Claire Barker, Richard Grant's treating physician, opined that surgical removal of the hip prosthesis led to "multiple medical postoperative complications which resulted in his death . . . ." She concluded that he "died as a complication of [the hip prosthesis] extraction."

Shortly after her husband's death, Mary Grant applied to SRB for accidental death benefits under G. L. c. 32, § 9. To be found eligible for those benefits, Grant had to show "proper proof" that her husband "died as the natural and proximate result" (G. L. c. 32, § 9[1], as appearing in St. 1945, c. 658, § 1), of the hip injury and hip replacement for

which he had been retired in 1978. As part of her proof, Grant submitted the June 16, 1986, Barker letter. Relying on the death certificate and the opinion of Dr. David O'Brien that, based on the death certificate, the "disabling injury leading to retirement was not the cause of death," SRB denied Grant's application. She appealed to CRAB, which referred the matter to the Division of Administrative Law Appeals (DALA) for a hearing and recommended decision pursuant to G. L. c. 32, § 16(4).

In August, 1987, DALA issued a recommended decision, concluding that Grant should be awarded accidental death benefits. The recommended decision included the administrative magistrate's findings covering the background facts essentially as we have related them to this point. In its "Decision Promulgated," dated October 19, 1987, CRAB adopted the findings of fact and incorporated the rest of the DALA recommended decision as part of the administrative record, but declined to make the recommended award, concluding that "[u]pon the record before this board, it is very difficult to make a determination [of eligibility] in this case. [I]t is essential that this Board be provided with the [m]edical [r]ecords of [Grant's] late husband's hospitalization from April 17, 1986, through his death on May 24, 1986." The matter was remanded to DALA with instructions to obtain the records. The pertinent records were not provided, although Grant submitted certain radiology reports which the administrative magistrate found irrelevant. In February, 1988, the magistrate wrote CRAB, asking that it declare the record closed and that it issue a decision "on the existing record." For reasons unexplained, CRAB did not act for four years. In a decision dated February 6, 1992, CRAB reviewed the record and concluded, without explanation, that Grant had now established that her husband died as a natural and proximate result of the injury for which he had been retired in 1978 and that Grant was therefore eligible for benefits. The matter was remanded to SRB with instructions to grant the benefits. SRB sought judicial review of CRAB's decision pursuant to the State Administrative Procedure Act,

G. L. c. 30A, § 14, claiming that the decision was arbitrary and capricious and not based on substantial evidence in the administrative record. Relying mainly on *Cherubino* v. *Board of Registration of Chiropractors*, 403 Mass. 350, 359 (1988), the judge concluded that, because CRAB's decision was supported by substantial evidence within the administrative record, "it is not arbitrary or capricious as a matter of law." This appeal followed.

The narrow question on which the appeal turns is whether CRAB's determination of eligibility in its 1992 decision, where that determination was based on essentially the identical record upon which CRAB previously declined to make a determination in 1987, is arbitrary and capricious, even though supported by substantial evidence, where CRAB failed to include within the record any explanation for its change of course.

Section 14 of c. 30A, the controlling statute, pertains to judicial review of agency adjudications. Section 14(7), as appearing in St. 1973, c. 1114, § 3, provides, in relevant part, that an agency action may be set aside, or the matter remanded to the agency for further proceedings, if the agency's action is:

> "(*e*) Unsupported by substantial evidence; *or* . . . (*g*) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." (Emphasis supplied.)

There are five additional bases enumerated in § 14(7), none of which is relevant to this case. Section 14(7) provides alternate bases upon which an agency's action may be set aside or remanded. Here, the judge, in essence, has impermissibly merged the two subsections, (*e*) and (*g*), by determining that, if the agency's decision is supported by substantial evidence, it cannot as matter of law be arbitrary and capricious. Such interpretation of a statute "that nullifies one of its provisions" is disfavored "if there is a reasonable alternative." *Ben Elfman & Sons, Inc.* v. *Home Indem. Co.*, 411 Mass. 13, 18 (1991). We recognize that the two subsections overlap con-

siderably and that, in a great majority of cases, an agency determination that is unsupported by substantial evidence is, at once, arbitrary and capricious as well. However, in unusual circumstances such as these, an agency action supported by substantial evidence may nonetheless be arbitrary and capricious. Cf. *Bowman Transp., Inc.* v. *Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974) (under the Federal Administrative Procedure Act, 5 U.S.C. § 706 [1994], an agency action "may be supported by substantial evidence . . . [but] may nonetheless reflect arbitrary and capricious action"; like its State counterpart, the Federal act sets forth substantial evidence and arbitrary, capricious action as two separate and distinct standards).

We take no exception with the judge's finding that, based on the submissions within the original 1987 record (i.e., the death certificate and the letters from Dr. O'Brien and Dr. Barker), together with the administrative magistrate's findings as adopted, CRAB's 1992 determination of eligibility was supported by substantial evidence. A reviewing court "may not displace an administrative board's choice between two fairly conflicting views [e.g., that of Dr. O'Brien and that of Dr. Barker], even though the court would . . . have made a different choice had the matter been before it de novo." *Southern Worcester Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 386 Mass. 414, 420 (1982).

The problem that arises, however, is that, in the 1987 "Decision promulgated," CRAB apparently found those submissions and findings inadequate to make a determination and, hence, remanded the matter to DALA to procure additional "essential" information, which was not forthcoming and which never became a part of the record. CRAB's 1987 action, while not a "final decision . . . in an adjudicatory proceeding," G. L. c. 30A, § 14, 1st par., as appearing in St. 1973, c. 1114, § 3, from which an appeal could properly be taken, is nonetheless a part of the administrative record. What we have then is an agency final adjudication that essentially contradicts an earlier interim determination made

on the same record, with no reason cited, or subsidiary findings made, explaining or supporting the change.

Section 11(8) of the Administrative Procedure Act, G. L. c. 30A, requires an agency in an adjudicatory proceeding such as this to issue a decision "in writing or stated in the record"; the decision "shall be accompanied by a *statement of reasons for the decision, including determination of each issue of fact* or law necessary to the decision . . ." (emphasis supplied). G. L. c. 30A, § 11(8), as inserted by St. 1954, c. 681, § 1. The requirement exists so that a reviewing court "may exercise its appellate function to determine whether the findings of the agency are supported by the evidence and whether given these findings, the agency correctly applied the law to the facts so found." *Maryland Cas. Co.* v. *Commissioner of Ins.*, 372 Mass. 554, 566-567 (1977). See also *Sherman* v. *Rent Control Bd. of Brookline*, 367 Mass. 1, 10-11 (1975). "[S]tatements of reasons, even if not required by c. 30A, tend to ensure administrative justice and to encourage public confidence in the administrative process." *Dixie's Bar, Inc.* v. *Boston Lic. Bd.*, 357 Mass. 699, 702 (1970). See also *Bowman Transp., Inc.* v. *Arkansas-Best Freight Sys., Inc.*, 419 U.S. at 285-286 ("While we may not supply a reasoned basis for the agency's action that the agency itself has not given, . . . we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned").

We are unable to detect within the existing record any discernible path leading to CRAB's 1992 decision to award benefits, other than, as suggested by SRB, a possible desire on CRAB's part to resolve in as expeditious a manner as possible a matter which, inexplicably, had lain dormant on its docket for some four and one-half years. The record contains neither a written determination of the critical issue of fact left open in 1987, deeming the record insufficient at that point to make a decision concerning eligibility; nor a statement of reasons or explanation supporting CRAB's change of position. In particular, CRAB offers no explanation why information it deemed "essential" in 1987 is, through mere

passage of time, no longer considered essential in 1992. We rule that that omission constitutes arbitrary and capricious action within the meaning of c. 30A, § 14(7)(*g*), and, we, therefore, reverse the judgment of the Superior Court upholding CRAB's decision. *Cherubino* v. *Board of Registration of Chiropractors*, 403 Mass. at 358-359, and *Massachusetts Elec. Co.* v. *Department of Pub. Utils.*, 376 Mass. 294, 312 (1978), are not to the contrary. In *Cherubino*, unlike here, the administrative record supporting the board's determination of a statutory violation by the appellant was not the same one upon which the board had previously found no statutory violation. Following remand, the record was expanded to include a second administrative hearing, reconstruction by the appellant of the earlier untranscribed hearing, and additional exhibits. *Cherubino*, 403 Mass. at 352-353. Furthermore, the board supported its amended decision with a statement in the record that its earlier failure to find a violation was "inadvertent." *Id.* at 359. *Massachusetts Elec. Co.* v. *Department of Pub. Utils.*, *supra*, concerned allegedly contradictory or inconsistent results reached by the Department of Public Utilities (DPU) in separate adjudications. The Supreme Judicial Court noted that the DPU was obligated under G. L. c. 30A, § 11(8), to supply reasons supporting its decision in a particular case, *id.* at 312, but that it was under no obligation to explain or reconcile that result with the result in another case. *Ibid.*

The judgment is reversed, and the matter is to be remanded to CRAB. At oral argument, it was represented that the husband's hospital records have now been provided. However, we do not know whether those records have been incorporated into the official administrative record. On remand, CRAB may in its discretion choose to include the records, if it has not already done so. CRAB is further instructed to render a final decision on the record (once it is closed) and to include therein a statement of reasons or explanation supporting its decision.

*So ordered.*